# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

RICHARD MICHAEL KESSLER,

   Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 329960
Kent Circuit Court
LC No. 15-002957-FH

---

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his conviction of operating a vehicle while intoxicated, MCL 257.625(1).  Defendant was sentenced to 4 to 20 years' imprisonment.  We affirm.

This case arises out of a traffic stop that occurred in northern Kent County.  First, defendant argues that the prosecution presented insufficient evidence at trial to support his operating a vehicle while intoxicated conviction.  Specifically, defendant asserts that there was not sufficient evidence to establish that he was intoxicated.  We disagree.

When reviewing a sufficiency of the evidence claim, this Court reviews the evidence de novo.  *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014).  This Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt."  *Id*.

Operating a vehicle while intoxicated "is a hybrid version of two offenses: MCL 257.625(1)(a) prohibits operating a motor vehicle under the influence of intoxicating liquor (OUIL) and MCL 257.625(1)(b) prohibits operating with an unlawful bodily alcohol content (UBAL)."  *People v Hyde*, 285 Mich App 428, 447-448; 775 NW2d 833 (2009).  Thus, pursuant to MCL 257.625(1), the elements of operating a vehicle while intoxicated are:

> (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, *or* with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood.  [*Id*. at 448.]

"[T]he third element is disjunctive; that is, it can be satisfied in *either* of the two ways." *Id.*

First, there was sufficient evidence presented at trial to support a conviction under the theory that defendant operated a vehicle while under the influence of alcohol. At trial, the police officer testified that he could smell intoxicants on defendant's breath and that defendant had bloodshot, glassy eyes. In addition, defendant admitted to drinking three or four 12-ounce mixed drinks made with rum. The police officer also testified regarding defendant's performance on the sobriety tests. For instance, he testified that defendant's eyes were jerky or jumpy during the nystagmus tests and that defendant could not complete the one-leg stand test. Finally, the jury was able to view the patrol car dash cam video and observe defendant's performance on the sobriety tests. From this evidence, the jury could reasonably conclude that defendant was operating a vehicle while under the influence of alcohol. See *id.* at 449 (concluding that the police officer's observations, the defendant's own admissions, the defendant's "slurred speech and failure of two sobriety tests, and the physical beer bottle evidence" supported a conviction of operating a vehicle while under the influence of liquor). Thus, the evidence, viewed in a light most favorable to the prosecution, supported a reasonable jury's finding that defendant operated a vehicle while under the influence of alcohol. *Id.*; *Lane*, 308 Mich App at 57.

In addition, there was sufficient evidence presented at trial to support a conviction under the theory that defendant operated a vehicle with a blood alcohol content of 0.08 or more. At trial, the prosecution admitted the toxicology laboratory report into evidence, which showed that defendant's blood alcohol content was 0.109 after his arrest. From this evidence, the jury could have reasonably concluded that defendant operated a vehicle with a blood alcohol content of 0.08 or more. Therefore, the evidence, viewed in a light most favorable to the prosecution, would support a reasonable jury's finding that defendant operated a vehicle with a blood alcohol content of 0.08 or more. *Id.*

Next, defendant argues that the trial court's instruction to the jury that they could find defendant guilty if some jurors believed defendant was operating the vehicle under the influence of alcohol and other jurors believed defendant was operating the vehicle with a blood alcohol content of 0.08 or more was improper. We disagree.

In criminal cases, a jury verdict must be unanimous, and a jury must be instructed on that requirement. Const 1963, art 1, § 14; *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994). Generally, this duty is fulfilled though a general instruction on unanimity, even when different acts might support a conviction. *Id.* at 512-513, 530. It is not required that the jurors unanimously agree on every fact supporting a conviction. *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). "[I]t is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *Id.*

Defendant asserts that he was entitled to a specific unanimity instruction. But as discussed above, the third element of operating a vehicle while intoxicated "is disjunctive; that is, it can be satisfied in *either* of the two ways." *Hyde*, 285 Mich App at 448. The third element can be satisfied by showing that defendant was either operating a vehicle under the influence of alcohol or that defendant operated a vehicle with a blood alcohol content of 0.08 or more. *Id.* Furthermore, the Michigan Model Criminal Jury Instructions state that "[i]f you all agree that the

defendant operated a motor vehicle either with an unlawful bodily alcohol level or while under the influence of" alcohol "it is not necessary that you agree on which of these violations occurred," but "you must all agree that one of those violations did occur." M Crim JI 15.6(f). Therefore, the trial did not err by instructing the jurors that they could find defendant guilty if some jurors believed defendant was operating the vehicle under the influence of alcohol and others believed that he was operating the vehicle with a blood alcohol content of 0.08 or more.

Defendant next asserts that the trial court improperly omitted paragraphs (2) and (3) from section 15.5 of the Michigan Model Criminal Jury Instructions. We disagree.

Defendant objected to the omission of the paragraphs at trial, so this issue is preserved for appellate review. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Claims of instructional error are reviewed de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Jury instructions "must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999). However, "an instruction that is without evidentiary support should not be given." *Id*. "This Court reviews jury instructions in their entirety to determine if there is error requiring reversal." *Id*. Even if imperfect, an instruction "is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502. "[I]f an applicable instruction is not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Riddle*, 467 Mich a 124. A conviction will be reversed only if, "after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probably than not that the error was outcome determinative." *Id*. at 124-125; see also MCL 769.26.

In this case, the trial court omitted from its instructions over defendant's objection:

(2) You may also consider bodily alcohol content in reaching your verdict. In that regard, [was / were] the test(s) technically accurate? Was the equipment properly assembled and maintained and in good working order when the test(s) [was / were] given?

(3) Were the test results reliable? Was the test given correctly? Was the person who gave it properly trained? Did the circumstances under which the test was given affect the accuracy of the results? [M Crim JI 15.5.]

Here, the trial court opined that "there was no evidence from which the jury could determine the accuracy or reliability of the test because neither the person who withdrew the sample or analyzed it were available to give testimony, subject to cross examination." In addition, the trial court noted that notice was given at the beginning of trial that the laboratory

analyst was not going to be called absent an objection, and defendant did not object. There is support for the trial court's determination that there was no evidence that supported the inclusion of paragraphs (2) and (3) because the laboratory technician did not testify. *Wess*, 235 Mich App at 243 (jury instructions require evidentiary support). But even if the trial court abused its discretion by omitting the requested instructions, defendant cannot demonstrate that doing so was outcome determinative. As noted, even without considering the blood test, the evidence was sufficient for a reasonable jury to conclude that defendant was operating a vehicle while under the influence of alcohol. First, the police officer testified that he smelled alcohol on defendant's breath, that defendant had bloodshot, glassy eyes, and that defendant performed poorly on the sobriety tests. In addition, defendant admitted to drinking mixed drinks made with rum that evening. The jury also saw defendant's performance on the sobriety tests at trial. In light of all the "untainted evidence," defendant cannot establish that the outcome of his trial would have been different if the trial court had given the requested instructions that lacked evidentiary support. *Riddle*, 467 Mich a 124-125. As a result, reversal is not required. *Id*.

In addition, defendant argues that the trial court failed to properly instruct the jury on an inference concerning defendant's blood alcohol test. However, the trial court's final instructions stated that the jurors "may infer that the defendant's bodily alcohol content at the time of the test was the same as his bodily alcohol content at the time he operated the motor vehicle." This statement directly mirrors MCL 257.625a(6)(a), which states:

> The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle.

Thus, the trial court's instructions were not improper.

Next, defendant argues that the trial court erred by not giving him jail credit for the 168 days he was incarcerated between his arrest and his sentencing. Because defendant failed to object to the calculation of jail credit at sentencing, this issue is unpreserved. *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005). "Unpreserved sentencing errors are reviewed for plain error." *Id*. Whether a defendant is entitled to jail credit is a question of statutory interpretation, which is reviewed de novo by this Court. *People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004).

The pertinent statute provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing. [MCL 769.11b.]

Our Supreme Court held that the jail credit statute does not apply to a parolee who is convicted and sentenced for a new felony that was committed while on parole. *People v Idziak*, 484 Mich 549, 562-563; 773 NW2d 616 (2009). MCL 791.238(2) provides in part:

> A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment.

Accordingly, when a parolee is arrested, the parolee resumes serving the unexpired portion of the parolee's maximum imprisonment for the original offense. *Idziak*, 484 Mich at 566. As a result, the "parolee is not incarcerated 'because of being denied or unable to furnish bond for the offense of which he is convicted.' " *Id*. at 566-567, quoting MCL 769.11b. "Because the parolee is required to remain in jail pending the resolution of the new criminal charge for reasons independent of his eligibility for or ability to furnish bond for the new offense, the jail credit statute does not apply." *Idziak*, 484 Mich at 567.

In this case, defendant was on parole when he committed the instance offense. He was arrested on March 12, 2015, and remained in jail until his sentencing on September 3, 2015. Defendant seeks credit for the 168 days he was incarcerated against his sentence for the instance offense. But pursuant to MCL 791.238(2), "defendant resumed serving the remaining portion of his earlier sentence when he was arrested." *Idziak*, 484 Mich at 568. He was not incarcerated "because of being denied or unable to post bond" for the instant offense. MCL 769.11b. Consequently, defendant is not entitled to 168 days of jail credit.

Defendant also asserts that the trial court's failure to credit him for time served before his sentencing violated his rights under the due process, equal protection, and double jeopardy clauses; however, the Supreme Court thoroughly discussed and rejected these challenges. *Idziak*, 484 Mich at 568-574. In addition, defendant argues that by denying him jail credit, the trial court punished him for exercising his constitutional right to a jury trial. But this argument has also been rejected. See *People v Priekskorn*, 424 Mich 327, 341; 381 NW2d 646 (1985) (noting that the motivation for a defendant to plead guilty to start "the sentencing clock running" on an offense does not alter the language of the statute and/or prevent the statute from applying). Accordingly, the trial court was correct in denying defendant jail credit for the time he was incarcerated before his sentencing in the instant case.

Defendant next argues that at trial the prosecution made statements that were improper and denied defendant of a fair trial and his due process rights. We disagree.

Defendant's trial counsel objected to the prosecutor's statement regarding the presumption that defendant's blood alcohol content set forth the lab report would be the same as defendant's blood alcohol content at the time of the traffic stop; therefore, this error was preserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Trial counsel, however, did not object to the statement that the jurors did not have to unanimously agree on one theory to establish the element of intoxication. Thus, this issue was not preserved. *Id*.

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). But the misstatement may be cured "if the jury is correctly instructed on the law." *Id*.

The prosecutor did not misstate the law concerning defendant's blood test results. The prosecutor stated that "Michigan law presumes that at the time that the blood was drawn, . . . [the jurors were] to presume that [the lab result] was what he was at the time of the stop." This statement reflects the language of MCL 257.625a(6)(a), which states that the "chemical analysis of [defendant's] blood . . . is presumed to be the same as at the time the person operated the vehicle." Furthermore, as discussed above, the trial court properly instructed the jury on this presumption; therefore, no error occurred.

In addition, the prosecutor's statement that the jurors did not need to be unanimous in regards to what theory they found had established that defendant was intoxicated was an accurate reflection of the law. *Hyde*, 285 Mich App at 448 (stating that the intoxication element "is disjunctive; that is, it can be satisfied in *either* of the two ways"). Further, as discussed above, the trial court correctly instructed the jury on the elements of operating a vehicle while intoxicated. Accordingly, no trial error occurred, and defendant was not denied due process or a fair trial by the complained of actions of the prosecutor.

Finally, defendant claims that he was denied effective assistance of counsel because his trial counsel failed to object to the prosecutor's statements and the trial court's instructions discussed above. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Here, because defendant failed to move for a new trial or an evidentiary hearing, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. *Sabin (On Second Remand)*, 242 Mich App at 659.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id*. "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id.*

First, trial counsel did object to the prosecutor's statement that Michigan law presumes that defendant's blood alcohol test result was the same as defendant's blood alcohol content when he was operating the vehicle. In addition, trial counsel also objected to the trial court's omission of paragraphs (2) and (3) from the final jury instructions (M Crim JI 15.5). Thus, defendant cannot establish that trial counsel fell "below an objective standard of reasonableness under prevailing professional norms." *Sabin (On Second Remand)*, 242 Mich App at 659.

-6-

Second, trial counsel did not object to the prosecutor's statement and the trial court's instruction that jury unanimity was not required as to which theory the jury found that the element of intoxication was met. So, as discussed above, that instruction was accurate. Ineffective assistance of counsel cannot be based on trial counsel's failure to raise a meritless objection. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Thus, defendant cannot establish that his trial counsel was not effective. *Id*.

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly